LIGOWSKY CLAY PIGEON CO. *v.* PEORIA TARGET Co. *et al.*

(*Circuit Court, N. D. Illinois.*   June 30, 1888.)

PATENTS FOR INVENTIONS—INFRINGEMENT—FLYING TARGETS.

Reissued patent No. 10,122, granted May 23, 1882, to the Ligowsky Clay Pigeon Company, the original being No. 231,919, granted September 7, 1880, to George Ligowsky, for a flying target, the novelty whereof is in throwing the target from the trap by means of a tongue of thin metal inserted in a slot in the peripheral rim of a concave target, and placed in the jaws of the trap, an essential feature being the separation of the tongue from the target, is not infringed by a target without such tongue or slot, thrown by means of two lugs on the peripheral rim of a target similarly shaped, clasped and held by a clamp forming part of the throwing arm of the trap.

In Equity.   Injunction against infringement of patent.

This was a bill filed by the Ligowsky Clay Pigeon Company against the Peoria Target Company and others, to restrain the infringement of a patent, and to have an account of past infringements.

*Parkinson & Parkinson*, for complainant.

*Coburn & Thacher*, for defendants.

BLODGETT, J.   In this suit complainant seeks for an injunction and accounting by reason of the alleged infringement of reissued patent No. 10,122, granted to the complainant May 23, 1882, for "a flying target," the original patent, No. 231,919, having been granted September 7, 1880, to George Ligowsky.   The invention covered by the patent is stated to consist—

"In constructing flying targets in such a manner as to cause them to imitate more closely the flight of a bird, as soon as the device is projected from a suitable trap or 'sender.'   This result is accomplished by giving to such targets a concave or dish or saucer shape, whose rim is slotted to receive a tongue of thin sheet metal or other light material, which tongue is to be inserted between the jaws of any trap capable of projecting the target in the manner desired.   The target, being thrown by a force thus applied near its periphery, has an axial rotation imparted to it that insures the utmost accuracy of flight, while the concavity of the device serves to partially imprison the air as soon as the momentum of the target is spent.   Consequently the target descends gradually, and is not broken in case it falls on hard ground.   *   *   *   The

target may be composed of clay or earthenware, or any fragile material that will be readily shattered as soon as a shot comes in contact with the same; or, if preferred, the target may be coated externally with any fulminate capable of emitting more or less smoke as soon as the device is struck with a shot."

It will be seen that the target described in this specification is to be concave or saucer shaped, and made, as is stated, of clay or earthenware, or other fragile material; and in the periphery of the lower rim there is a slot, through which a thin tongue or ear is extended in the same plane as the lower rim of the target; the use of this tongue or ear being to hold the target upon the arm of the trap, so that it will be thrown or projected by the action of the spring. But the patentee says:

"The tongue, E, instead of being applied to the target, may constitute part of the trap or sender, being in this case so arranged as to readily slip out of the slot, D, when said trap is sprung."

The patentee further says:

"I do not propose to limit myself to the exact shape or proportion herein described and illustrated, as it is evident the leading feature of my invention will be attained by any construction that will permit a dish or concave target having an axial rotation imparted to it by the trap or sender that projects the device through the air."

Infringement is charged of the first, second, fourth, and fifth claims of the patent, which are:

"(1) A flying target, concave in general form, and provided with a flat peripheral tongue, wherewith the device is applied to the jaw or clamp of a trap, substantially as herein described; said flat tongue being separate and distinct from the target proper, for the purpose set forth.

"(2) A fragile flying target, concave in general form, and provided with a flat peripheral tongue, wherewith the device is applied to the jaw or clamp of a trap, substantially as herein described; said flat tongue being separate and distinct from the target proper, for the purpose set forth.

"(4) A concave or dish shaped flying target, composed of a suitable fragile material, and slotted at its periphery to receive a flat tongue; said target having a strengthening rim, C, at the margin of its flange, B, as and for the purpose herein described.

"(5) A flat tongue projecting from the periphery of a flying target, for the purpose of enabling the latter to be thrown in the manner herein described; said flat tongue being separate and distinct from the target proper, as set forth."

Defendant uses a dish-shaped clay target intended to be thrown from a trap like the complainant's, and in its shape and general formation very much like the complainant's, except that it contains no tongue or ear projecting from the side of the rim or periphery, and by which it is held to the arm of the trap for throwing, and no slot in the rim for receiving the tongue of the sender. In place of such tongue or ear the defendant's target contains two small lugs upon the outside of the rim, by means of which a clamp forming a part of the throwing arm of the trap clasps and holds the target in position for throwing.

The defense set up and mainly relied on, and the only one which I care to consider in this case, is that of non-infringement. It will be noticed that the first and second claims of the patent call for a flying target

with a "flat peripheral tongue," said flat tongue being separate and distinct from the target proper. The defendants' target contains no flat peripheral tongue, and no tongue separate and distinct from the target proper; the only difference between these two claims being that the second specifically calls for a fragile target. But the complainant insists that the defendants' target infringes these two claims, because it is charged that the flat tongue by which the target is held to the throwing arm of the trap is made, in the defendants' device, a part of the trap, instead of a part of the target; and that, when the target is placed in position in the trap for the purpose of being projected into the air by the throwing action of the trap, the target has a flat peripheral tongue. I do not concur in this construction of complainant's patent, as I am quite clear that Ligowsky intended to make the flat peripheral tongue an element of the two first claims of his patent; and while he provides that the tongue may constitute a part of the trap, yet he at the same time, in the same clause making this provision or exception to the general structure of his device as patented, also provides that the tongue upon the trap must slip readily out of the slot in the rim of the target. In other words, it is evident, when his specifications and claims are taken together, that he intended to cover as his invention a flying target having a flat peripheral tongue projecting from the slot in the rim of the target, and which tongue was to be made separate from the target, and not integral with and a part of the target; or else a slot in the rim of the target through which a flat tongue fixed to the throwing arm of the trap might be inserted for the purpose of attaching the target to the trap, so that in either case there must be a separate peripheral tongue fastened to the rim of the target, and to be grasped by the jaw of the trap, or else there must be a slot in the target into which the tongue of the trap may pass to attach the target to the trap. The fourth claim calls for a concave or dish-shaped flying target, composed of suitable fragile material, and slotted at its periphery to receive a flat tongue; and defendants' target does not infringe this claim, for the obvious reason that it is not slotted at the periphery for the purpose of receiving any kind of tongue. The fifth claim calls for a target with a flat tongue projecting from the periphery for the purpose of enabling the target to be thrown, which flat tongue must be separate and distinct from the target proper as set forth; and, as already stated, the defendants' target does not contain a flat tongue, and hence does infringe this claim.

It is immaterial to inquire whether or not the patentee might have had a claim for a target with a plain rim, or a rim with lugs upon it, or any other device by which it could be readily attached to the throwing arm of the trap, as it is sufficient for the purposes of this case to say that he saw fit to claim these specific devices of a target with a slotted rim, or a target with a separate flat peripheral tongue for the purpose of attaching it to the arm of the throwing trap; and, having made his claim for such devices, he cannot now be allowed to cover any other and different device. Nor can the complainant be helped in this matter by the clause in his specifications where he states that he does not propose to limit himself

to the exact shape or proportion of his target as described and illustrated, as the leading features of his invention will be attained by any construction that will permit a "concave target to be projected with an axial rotation from a trap," because he has confined himself by his claims to the specific construction set out in the claims, and cannot be allowed more than the claims fairly and clearly cover; and, having confined himself to special features of construction, he cannot have his claims so construed as to include other and different features.

The doctrine of equivalents, which the complainant invokes against the defendants' target in this case, does not seem to me to be in the least applicable. There is nothing in the defendants' target which is equivalent to the tongue or slot in the complainant's target. It is true that the lugs or rim upon the defendants' target aid in fastening it to the throwing arm of the trap, but the function of these lugs after all is widely different, and the mode of attaching the defendants' target to the throwing arm is different from what it is in the complainant's target. But aside from this question it is very clear from an inspection of the contents of the file wrapper of the patent-office showing the claims which were first made under this patent, and those which were finally allowed, that this patentee has restricted himself to the special form of target with the slot or tongue, as covered by the claim, and must abide by those claims as made, and cannot be allowed such a construction of the patent as will in effect give the patentee the benefit of claims which the patent-office denied. The bill is therefore dismissed for want of equity.